[No. 34594. Department Two. January 22, 1959.]

MERCER ISLAND BEACH CLUB, *Respondent*, v. LLOYD F. PUGH et al., *Appellants*.[1]

*Leo W. Stewart*, for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *MacDonald, Hoague & Bayless*, for respondent.

*Lenihan & Ivers* and *Fred W. Catlett, amici curiae*.

WEAVER, C. J.—Defendants appeal from a decree and mandatory injunction that (a) quiets title of certain property in plaintiff; (b) orders defendants to remove, within sixty days "all portions of the wharf, pier, dock, and any other structure constructed or maintained by said defendants lying under, upon or over said property of the plaintiff"; (c) restrains and enjoins defendants from building any

[1]Reported in 334 P. (2d) 534.

structure over plaintiff's property; and (d) dismisses defendants' cross-complaint and affirmative defenses with prejudice.

The property involved is on the southeastern shore of Mercer Island, in Lake Washington, a short distance north of the south tip of the island. The line of ordinary high water, or shore line, extends from southwest to northeast. The government meander line, which is some one hundred fifty feet below, or lakeward, approximately parallels the shore line.

Defendants' property is north of plaintiff's. The common boundary line between them, which extends from west to east, is described as follows:

"Beginning at the northwest corner of said Government Lot 2 [Section 31, Township 24 North, Range 5 East, W. M.]; thence east along the north line of said lot and said line produced, 1565 feet, more or less, *to the meander line of Lake Washington;* . . ." (Italics ours.)

Since the shore line extends from southwest to northeast, and the common boundary line extends from west to east across the shore line to the meander line, it is apparent that the shore line and the boundary line form an acute angle on the north side of the common boundary line.

Defendants built a dock just north of the apex of the acute angle formed by the intersection of the shore line and the common boundary line. The dock is "T" shaped, with the stem perpendicular to the shore line. The southwest end of the top of the "T", which extends from the southwest to the northeast, projects across the common boundary line approximately ten feet into the property claimed by plaintiff. The dock is between the shore line and the government meander line.

The parties to this action deraign title to their respective properties from a common grantor, the Northern Pacific Railway Company and its affiliate, Northwestern Improvement Company. July 2, 1864, Congress granted certain land to the railroad to aid in the construction of a railroad from the East to Puget Sound, by the northern route. 13 Stat. 365 *et seq*. March 26, 1884, the railroad filed, in the office of

the Commissioner of the General Land Office, a map show-
ing the definite location of its railroad from "New Tacoma to
South Prairie in Washington Terry." May 10, 1895, the
United States issued a patent to the railroad. (A certified
photostatic copy of the map and patent are in evidence and
contain Section 31, Township 24 North, Range 5 East, W. M.,
in which the land involved is located.) In 1921, the state of
Washington deeded the second-class shoreland (land be-
tween the line of ordinary high water and the line of navi-
gability. RCW 79.04.080) to the common grantor of the
parties.

There is substantial evidence in the record to support the
trial court's finding that defendants "have no rights by ad-
verse possession or prescriptive user, by occupation, pay-
ment of taxes, or otherwise, of any portion of the property
of plaintiff"; that the properties are not on a cove; and that
the property lines of plaintiff and defendants are not con-
fused. We cannot disturb these findings of fact.

Basically, defendants' thirty-three assignments of error,
which are argued together, present only one issue: Does
plaintiff own the property over which defendants' dock ex-
tends?

In support of their thesis, defendants urge (a) that plain-
tiff owns only to the line of ordinary high water; and (b)
that plaintiff fails to prove the line of navigability that fixes
the outer line of the shorelands conveyed by the state.

Article XVII, § 1, of the Washington constitution, pro-
vides:

"The state of Washington asserts its ownership to the
beds and shores of all navigable waters in the state . . .
up to and including the line of ordinary high water within
the banks of all navigable rivers and lakes: *Provided*, that
this section shall not be construed so as to debar any person
from asserting his claim to vested rights in the courts of the
state."

█ This court has held consistently that patents is-
sued by the United States prior to the adoption of the Wash-
ington constitution, to land bordering bodies of water in
which the government meander line is below the line of

ordinary high water, operate to carry title to the meander line. *Brace & Hegert Mill Co. v. State*, 49 Wash. 326, 95 Pac. 278 (1908), and cases cited; *King County v. Hagen*, 30 Wn. (2d) 847, 849, 194 P. (2d) 357 (1948). This rule applies, even though the patent was actually issued after statehood, if the right to the patent accrued prior to the adoption of the state constitution. *Kneeland v. Korter*, 40 Wash. 359, 82 Pac. 608, L. R. A. (N.S.) 745 (1905); *Wilson v. Prickett*, 79 Wash. 89, 92, 139 Pac. 754 (1914); *Narrows Realty Co. v. State*, 52 Wn. (2d) 843, 329 P. (2d) 836 (1958), and cases cited.

■ Plaintiff's title meets all of the requirements of this rule; therefore, under the facts of the instant case, the trial court did not err when it quieted plaintiff's title to the meander line. It is undisputed that a portion of defendants' dock, which is between the shore line and the government meander line, extends onto plaintiff's property; it follows, that it was not error to order defendants to remove the dock therefrom.

We do not consider defendants' second argument—that plaintiff failed to prove the line of navigability that fixes the outer line of the shorelands conveyed by the state—for plaintiff deraigns title through the patent to which its predecessor in interest became entitled prior to statehood, not through the state's grant of second-class shorelands. In the circumstances of the instant case, defendants' maintenance of the dock is not navigation; therefore, we need not consider whether the line of navigability may be established (by decree of court or otherwise) between the shore line and the government meander line; or what effect, if any, it would have on plaintiff's ownership should the line of navigability be established outside the government meander line. See Laws of 1927, chapter 255, § 106, p. 521; Rem. Rev. Stat., § 7797-106 [*cf.* RCW 43.65.050]; RCW (Sup. 1957) 43.30.150 (4).

The judgment is affirmed.

HILL, DONWORTH, ROSELLINI, and OTT, JJ., concur.